ALBANY,
January, 1816

LORILLARD
v.
PALMER.

P. & G. LORILLARD *against* PALMER and others.(*a*)

Goods were laden on board of a vessel to be transported from *Richmond* to *New-York*. The vessel proceeded on her voyage in the beginning of *February*, but finding the *Chesapeake* blockaded by a hostile squadron, and that it would be impossible to put to sea without being captured, went into *Norfolk*, and finally returned to *Richmond*. In *September* following the plaintiffs demanded their goods, in order to transport them to *New-York* by land, but the master refused to deliver them unless on being paid half freight; and a few days thereafter, the vessel, with the goods on board, was totally lost, without the default of the defendants or the master, the blockade having continued until that time : *Held*, that the

THIS was an action of assumpsit, for the non-delivery of a quantity of tobacco, shipped on board the schooner *Seaman*, of which the defendants were owners, at *Richmond*, in *Virginia*, to be delivered to the plaintiffs in *New-York*, pursuant to a bill of lading, dated *January* 21*st*, 1813, signed by the master of the schooner. The cause was tried before his Honour the Chief Justice, at the *New-York* sittings, in *April*, 1816.

The schooner *Seaman*, in *January*, 1813, during the late war between this country and *Great Britain*, was lying in the port of *Richmond*, bound for *New-York*, and 13 hogsheads of tobacco were shipped on board of her by the plaintiffs' agent. About the 26th or 27th of *January*, the vessel set sail on her voyage for *New-York*, and on the 2d of *February*, the master of the vessel came to anchor in *Hampton Roads*, for the purpose of ascertaining whether he could safely proceed to sea, there being at that time a *British* squadron blockading the *Chesapeake*, through which the vessel must necessarily pass. When he had ascertained the impossibility of getting to sea without being captured, and the danger of remaining in *Hampton Roads*, by the advice of Captain *Stewart*, of the *United States*' navy, commanding on that station, he put into *Norfolk*, and there remained until about the 7th of *March*, when, on account of the increase of the *British* squadron, it was deemed unsafe to remain at

(*a*) This case was decided in *August*, 1817.

defendants had no claim for freight, the voyage not having been performed ; and that more than a reasonable time having elapsed for sending on the goods, they had no right to retain them, and were liable to the plaintiffs for their value, notwithstanding they were lost by inevitable accident.

The ship owner is bound to deliver the goods to the consignee within a reasonable time ; and it is only on the delivery of them that he is entitled to freight. If he is unwilling or unable to forward them, the freighter is entitled to receive them back without paying any freight.

Where the completion of the voyage is prevented by a permanent blockade, and the vessel is unable to put to sea, and she returns after having proceeded to the mouth of the bay, on which her port of lading is situated, the ship owner is not entitled to freight *pro rata*, and the freighter is entitled to receive his goods without paying freight, the blockade putting an end to the contract.

*Norfolk*, and he returned with the vessel to *Richmond*, where she arrived on the 15th of the same month.   The schooner continued at *Richmond* until the 21st of *September*, when, in consequence of a violent storm and freshet, she was sunk at the wharf, without any fault or negligence of the defendants or their agents, and the tobacco in question was wholly ruined and spoiled.  At the time the bill of lading was signed, it was not known at *Richmond*, that the *Chesapeake* was blockaded, nor was it known by the master or the defendants ; and, in fact, the blockade did not then exist ; but it continued without intermission, from the time the vessel attempted to sail on her voyage, until after she was lost.   On the 16th of *September*, after her return to *Richmond*, the agent of the plaintiffs demanded the tobacco from the master, for the purpose of forwarding it to *New-York*, by land, and he refused to deliver it, unless on being paid half freight.

ALBANY,
January, 1818.

LORILLARD
v.
PALMER.

A verdict was taken for the plaintiffs, for the invoice price of the tobacco, with interest, subject to the opinion of the court, on a case to be made, which either party might turn into a bill of exceptions, or special verdict.

*D. B. Ogden*, for the plaintiffs.  The contract of affreightment, like all other contracts, must be performed in a *reasonable time*.   The plaintiffs having waited from *January* to *September*, were entitled to receive their goods, on demand, without paying any freight.  *Herbert* v. *Hallett*, (3 *Johns. Cas.* 93. 98.)

The contract was made during war, and the defendants were to receive a *war* freight.   They knew that they must encounter the hazards incident to a state of war.   It was their duty to attempt to reach *New-York*, notwithstanding the blockade, and if apprehensive of capture, they might have had the vessel and freight insured against that peril. There is no exception of any such hazards ; and the apprehension of capture, however well founded, is no legal excuse for the non-performance of the contract, (*Atkinson* v. *Ritchie*, 10 *East Rep.* 530.  *Abbott on Ships*, 361.)

As to the claim of the master for half freight, there was no pretence for it.   The defendants were entitled to the whole freight, or none.   There could be no apportionment

of freight. No freight is due, where the the vessel returns to her port of departure, without performing the voyage, (*Griswold* v. *New-York Insurance Company,* 1 *Johns. Rep.* 205. 212.)

*Colden, contra.* This case is distinguishable, in some of its most important features, from those which have been cited. It is not a contract of charter-party ; but the goods were shipped, under a bill of lading, on board of a *general ship.* This is an action of assumpsit, to recover the value of the goods. It is not pretended, that the non-delivery of them, or the loss, has proceeded from any negligence or fault of the defendants. The claim of the plaintiffs rests solely on the ground, that the defendants refused to return the goods to them when they were demanded. But, we contend, that the shipper cannot, after the voyage is commenced, demand his goods, without paying freight, unless the master is in fault. (*Molloy,* b. 2. ch. 4. s. 5. *Beawes' L. M.* 103. 137. *Malyne,* 98. *Herbert* v. *Hallett,* 3 *Johns. Cas.* 93.) The master may insist on carrying on the goods, so as to be entitled to his freight. (*Griswolds* v. *New-York Insurance Company,* 1 *Johns. Rep.* 204. S. C. 3 *Johns. Rep.* 321. *Bradhurst* v. *Columbian Insurance Company,* 9 *Johns. Rep.* 17.) Having a *lien* on the goods for his freight, he cannot be deprived of that *lien,* without a tender of the freight. If he gives up the goods, he loses his *lien.* The obstruction to the *Chesapeake,* in this case, was not a regular blockade ; it was a temporary obstruction, and might be removed the very next day. The master was justified, therefore, in waiting for its removal. Admitting that a war freight was to be paid, a fact which does not appear in the case, yet, the ship owners were not, therefore, bound to encounter imminent peril, or inevitable loss, by running into the arms of the enemy. Fear of capture will excuse a deviation, (*Reade* v. *Commercial Insurance Company,* 3 *Johns. Rep.* 352. *Post* v. *Phœnix Ins. Company,* 10 *Johns. Rep.* 79. *Suydam & Wyckoff* v. *Marine Insurance Company,* 2 *Johns. Rep.* 138.) If, then, the master was justified in putting back, and returning to *Richmond,* to avoid capture, he was equally justified in remaining. In

*Barker* v. *Cheriot*, (2 *Johns. Rep.* 352. 356.) *Thompson*, Ch. J. says, the master ought to have waited at *A.* for the removal of the detention of the cargo ; and that, being an entire voyage, out and home, there could be no apportionment of freight. It is well settled, that if the owner takes his goods, after the voyage is commenced, and before it is completed, he must pay freight for them, *pro rata*. (*Luke* v. *Lyde*, 2 *Burr.* 882. *Lutwyche* v. *Grey*, *Abbot*, 298. part III. ch. 7. s. 13.)

ALBANY.
January, 1818.

LORILLARD
v.
PALMER.

*S. Jones*, jun. in reply. The bill of lading contains a positive engagement to deliver the goods to the plaintiffs, the dangers of the sea only excepted ; the defendants thereby taking upon themselves all other risks. The plaintiffs, after waiting a reasonable time, had a right to say to the defendants, " carry on the goods, agreeably to your contract, or return them to us." The defendants refused to deliver them ; and made no offer to carry them on by land, or in any other way, but insisted on receiving half of the freight. If a ship becomes damaged during the voyage, the owner is allowed a reasonable time, and no longer, to make the necessary repairs, and to proceed on the voyage. Where there is no limited time expressed in the contract, it must be always understood to mean a reasonable time. The cases which have been cited, all show, that in case of accident during the voyage, the master must send on the goods by another ship, by lighters, or by land, or in the best practicable mode, in order to entitle himself to freight. (*Bradhurst* v. *Col. Ins. Co.* 9 *Johns. Rep.* 9. *Schieffelin* v. *The N. Y. Ins. Co.* 9 *Johns. Rep.* 21. 3 *Johns. Rep.* 331. 10 *East*, 393. *Park*, 221.) In *Gosling* v. *Higgins*, (1 *Campb. Rep.* 451.) Lord *Ellenborough* was of opinion, that the seizure of the goods, by the officers of government, and that without any fault of the master, did not excuse the non-delivery of them. (*Wilson* v. *R. Ex. Ass. Co.* 2 *Campb. Rep.* 624.)

As to *pro rata* freight, that is never demandable, except at a port of necessity, and is not payable, where the ship returns to her port of departure. The right to *pro rata* freight is wholly founded on the acceptance of the goods by the owner, at the intermediate port. The master has no

ALBANY,
January, 1818.

LORILLARD.
v.
PALMER.

*lien* on the goods for such freight. A *lien* is allowed only in favour of a person who has performed his contract.

THOMPSON, Ch. J. delivered the opinion of the court. The claim, in this case, is founded on the non-delivery of a quantity of tobacco, shipped on board a schooner, of which the defendants were owners, to be transported from *Richmond*, in *Virginia*, to *New-York*, and there delivered, pursuant to a bill of lading for that purpose, signed by the master of the schooner. The vessel, with the tobacco on board, sailed on the voyage about the 26th of *January*, 1813 ; but finding the *Chesapeake* blockaded by a *British* squadron, was unable to proceed on the voyage, and some time in *March* following returned to *Richmond*, where she remained with the tobacco on board, until the 16th of *September*, when the agent of the plaintiffs demanded the tobacco, which the master of the schooner refused to deliver, unless he was paid *half freight*, which the agent refused to pay ; and on the 21st of the same month of *September*, the schooner, in consequence of a violent storm and sudden freshet, was sunk at the wharf, and the tobacco wholly ruined and lost.

The case does not warrant the conclusion that the loss was attributable to the negligence of the master, or the want of proper care of the vessel. Here has, therefore, been a dead loss, without any real or actual fault, other than the non-delivery of the tobacco when demanded.

The only question in the case is, whether the master was bound to comply with the demand without receiving the half freight claimed. It appears, by the case, that the blockade was not known to the parties at the time the schooner sailed from *Richmond* ; and it continued until after the loss happened. Although it may appear equitable that the owners of the vessel should receive some compensation for the care they had taken of the plaintiffs' goods, yet I know of no principle of law on which half freight could be claimed. The defendants had a right to demand either full freight, or none at all. But I think no freight could be claimed. Whenever any accident occurs to a vessel, or there is any interruption of the voyage, the ship owner has a reasonable time to repair his vessel, or wait for the remo-

val of the obstruction, and then to carry on the cargo and earn his freight. But there must be a limitation to such delay. It would be a monstrous doctrine to allow the ship owner to retain the cargo, and perform the voyage when he pleased. No time being specified in the bill of lading for the delivery of the goods, the general rule of law applicable to the performance of all other contracts, must govern, to wit, that it must be done in a reasonable time. Although the right to freight commences on the loading of the goods, · it is a defeasible right, depending on the success of the voyage ; and in case no part of the *iter* is performed, to any beneficial purpose, no freight is earned. (3 *Johns. Cas.* 97.) If the ship owner is determined to have his freight, he must forward the goods. It is upon the delivery of the cargo that the right to freight depends, unless such delivery is waived, or some new contract is made respecting it. If the ship owner will not, or cannot, carry on the cargo, the freighter is entitled to receive his goods again without paying any freight. (*Hunter* v. *Prinsep*, 10 *East*, 393.) Any other rule would be hard and unjust upon the merchant. (9 *Johns. Rep.* 20.)

The question, in all cases of this kind, must depend, in a great measure, upon the particular circumstances of each case, according to the nature and cause, as well as the length, of the delay. In the case before us, the plaintiff had waited a reasonable time for the goods to be carried on. Nearly nine months had elapsed from the time of shipment, and the tobacco was wanted by the plaintiffs to be sent on in some other way. If the defendants were bent upon receiving their freight, they should have transported the goods in some way or other. If not by water, they should have sent them on by land, which might have been done, though at a much greater expense. But as the freight to be paid was a war freight, it might, perhaps, have warranted such transportation. The blockade of the *Chesapeake* was not such a temporary obstruction as that it could reasonably be calculated that it would be removed in a short time. From the length of time it had already continued, and the local importance of the place, no doubt could be entertained but that it was intended as a permanent measure of hostility, to be continued as long as the war lasted, if in the power of the

ALBANY,
January, 1813.

LORILLARD
v.
PALMER.

ALBANY,
January, 1818.

LORILLARD
v.
PALMER.

enemy to maintain it. There was, therefore, no reasonable prospect of the goods being carried on by water. It would be extremely unjust, if the merchant could not again obtain his goods, either to sell, or send them on in some other way, without being charged with the freight, when no part of the voyage had been performed. The ship owners would not have been bound to keep their vessel with the cargo on board until the blockade was removed. They must have had a right, after a reasonable time, to re-deliver the cargo, and discharge themselves from the bill of lading. There would be no reciprocity, unless the merchant might, within a reasonable time, demand his goods, when all prospect of sending them on had failed.

This is not like an embargo, or some temporary obstruction to the performance of the voyage, which might furnish an excuse for the delay, without putting an end to the contract. The effect of the blockade upon the bill of lading is very much the same as upon a charter party. It is well settled, that by the blockade of the port of discharge, a charter-party is dissolved, and all claim to freight under it is gone. *Scott* v. *Libby and others*, (2 *Johns. Rep.* 336.) is a very strong case on the point. The vessel was chartered on a voyage from *New-York* to the city of *St. Domingo*, and back to *New-York*. On arriving in sight of *St. Domingo*, she was turned away, on account of the port being blockaded. On her return to *New-York*, the owners of the vessel refused to deliver the cargo until the freight was paid. But in an action of *trover* for the goods, it was held that no freight was due ; that there could be no *pro rata* freight, because the goods were brought back to the port of lading, and no benefit accrued to the owner. So, in the case before us, the goods were brought back to the port of lading, and no benefit had accrued to the plaintiffs, and the compensation claimed must have been in the nature of a *pro rata* freight.

Suppose, in this case, the tobacco had not been lost, and an action of trover had been brought by the owner, it would have been very analogous to that of *Scott* v. *Libby.* If an action of trover could have been sustained without paying the freight, it must follow, as matter of course, that the defendants are responsible for the loss ; because, they were in

default in not delivering the tobacco when demanded. We are, upon the whole, of opinion, that under the circumstances of this case, the plaintiffs had waited a reasonable time for the defendants to send on the goods and earn their freight; and being in default, by not delivering the tobacco when demanded, they must be responsible for the subsequent loss. The plaintiffs must, accordingly, have judgment upon the verdict of the jury.

<div style="text-align:center">Judgment for the plaintiffs.</div>